**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RAMON L. AGOSTO, *et al.*,

    **Plaintiffs,**

          **v.**                **CIVIL NO.** 08-2392 (FAB)

ACADEMIA SAGRADO CORAZON,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge

    Before the court are four motions for summary judgment: defendant Academia Sagrado Corazon's first and second motion, third party defendant Humana's motion, and plaintiff's motion for partial summary judgment.   For the reasons set forth, the Court **DENIES** defendant ASC's motions; **DENIES** defendant Humana's motion; and **DENIES** plaintiff's motion.

**DISCUSSION**

**I.   Procedural History**

    On December 18, 2008, plaintiffs Ramon L. Agosto ("Agosto"), Dinah L. Rios-Santiago ("Rios"), Isabel Santos-Pantoja ("Santos"), and Maria V. Tirado-Gonzalez ("Tirado") (collectively referred to

as "plaintiffs")[1] filed a complaint, (Docket No. 1), alleging a
violation of their right to be notified of continuance of health
coverage under the Consolidated Omnibus Budget Reconciliation Act
("COBRA").  See 29 U.S.C. § 1166.  The complaint names Academia
Sagrado Corazon ("ASC"), a private school located in San Juan,
Puerto Rico, as the defendant.  The complaint alleges that ASC
failed to notify plaintiffs of their COBRA rights at the time they
commenced employment and at the time their employment was
terminated.

On May 16, 2009, defendant ASC filed a motion for summary
judgment asking the Court to dismiss the claims against it because
ACS did not act as group health plan or as plan administrator,
because ACS fulfilled all duties requested within reasonable
diligence, and because plaintiffs did not request any COBRA
benefits nor did they exhaust administrative remedies before
commencing litigation.  (Docket No. 11.)  Plaintiffs opposed the
motion on June 19, 2009, alleging that ACS did not deny that it
failed to provide the requisite notice required under COBRA, nor

---

[1] Originally there were seven plaintiffs in the complaint.
Plaintiffs Edda Brown-Maesa, Migdalia Lopez-Rosado, and Isabel M.
Rodriguez-Desoto voluntarily dismissed their claims against ASC
because they were not covered by the group health plan at the time
of termination of their employment.

did it provide evidence of the plan under which another party would be identified as being liable, (Docket No. 18), to which the movants replied on July 13, 2009 (Docket No. 22).

Defendant ASC then filed an answer to the complaint and a third party complaint against Humana Insurance of Puerto Rico, Inc. ("Humana"), Ceridian Corporation ("Ceridian"), and Triple-S Management Corporation ("TSM") on October 2, 2009 (Docket No. 31).[2] In its complaint against Humana, ASC alleges that Humana was the party liable for failing to provide continuation coverage notice to plaintiffs. (Docket No. 31.)  On March 9, 2010, Humana filed a motion for summary judgment, alleging that it did not act as the plan administrator or the plan sponsor under the plan.  (Docket No. 70.)  ASC opposed the motion on April 15, 2010 (Docket No. 77), to which the third party defendant replied on May 3, 2010 (Docket No. 82).

On April 20, 2010, plaintiffs filed a motion for partial summary judgment, alleging that plaintiffs were entitled to the imposition of statutory penalties for defendants' failure to provide notification of continuation coverage after plaintiffs' termination, (Docket No. 79), to which ASC filed an opposition on

---

[2] On December 1, 2009, the Court granted ASC's motion for voluntary dismissal of the complaint filed against TSM.

May 25, 2010 (Docket No. 87).  Subsequently, ASC filed a second

motion for summary judgment on July 26, 2010, reiterating the

arguments raised in its initial motion and requesting dismissal of

the plaintiffs' claim for damages incurred through medical bills,

(Docket No. 88), to which plaintiffs filed an opposition on

August 9, 2010 (Docket No. 91).

## II.  Uncontested Facts

Agosto, Rios, Santos, and Tirado were all employed by ASC for

the school year commencing in August 2007 and ending in May 2008

(Docket Nos. 14-8, 14-9, 14-10, 14-11).  In January of 2008, ASC

entered into an agreement with Humana to provide group health plan

coverage to ASC's employees.  (Docket No. 11-5.)  Around this time,

Mr. Reinaldo Morales ("Principal Morales"), the principal at ASC,

convened a personnel meeting to announce the coverage of the new

health plan to employees.  (Docket No. 11-5.)  ASC does not allege

that written notice regarding continuation coverage was provided to

covered employees at this time, or at any other time during their

employment.  (See Docket No. 11-5.)  The plaintiffs were covered by

the group health plan administered by Humana for the months of

February 2008 through June 2008.  (Docket No. 14-18) (showing

Invoice of ACS to Humana for the months mentioned).  In May of

2008, plaintiffs' employment with ACS was terminated.  (Docket

No. 18-2.)   On May 19, 2008, ACS sent Humana a notice for
cancellation of health coverage for Rios, Santos, Agosto, and
Tirado.  (Docket Nos. 14-2, 14-3, 14-4, 14-5.)  ACS did not send a
notice to plaintiffs regarding their right to continuation coverage
after their termination.   (See Docket No. 11-3.)   In August
of 2008, all plaintiffs started working for another employer,
Academia San Jorge, another private school in the San Juan area.
(Docket Nos. 11-3, 18-3.)

### III. Exhaustion of Remedies

ACS asks the Court to read into the ERISA requirements, under
which COBRA claims are considered, that plaintiffs must exhaust
administrative remedies before commencing litigation.  (Docket 11-
2.)  See 29 U.S.C. §§ 1132(a),(c); 1133; see also Morales-Cotte v.
Cooperativa de Ahorro y Credito Yabucoeña, 73 F. Supp. 2d 153
(D.P.R. 1999).   The Court finds that such a reading is not
appropriate.   See Morales-Cotte, 73 F. Supp. 2d at 159-60.
Morales-Cotte holds that where a plaintiff is bringing suit for a
violation of COBRA's notification and continuing coverage
requirements, exhaustion of administrative remedies is not required
when plaintiff's claim is based on a statutory violation of ERISA,
as distinguished from a situation where plaintiff is claiming
rights under the terms of a group health plan.  Morales-Cotte noted

that although the First Circuit Court of Appeals has not definitively ruled on the issue, other circuits have. The majority position, which <u>Morales-Cotte</u> adopted, "holds that where . . . a plaintiff brings an action under ERISA for a statute-based claim, the plaintiff is not first obligated to pursue administrative remedies before seeking relief in the federal courts." <u>Id</u>. This Court adopts the position of <u>Morales-Cotte</u>, and finds that exhaustion of administrative remedies in this case is not required.

**LEGAL STANDARDS AND ANALYSIS**

**I.   Summary Judgment Standard**

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); <u>see also</u> <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52. (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. <u>See</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## II. Application of COBRA

The parties have submitted extensive pleadings, but the primary issues in dispute can be summed up as follows: (1) whether Humana was contracted to provide COBRA coverage; (2) whether ACS or Humana, as group health plan, is liable for failing to notify plaintiffs of their coverage rights at commencement of coverage under the plan; and (3) whether ACS or Humana, as plan administrator, is liable for failing to notify plaintiffs of their coverage rights at the qualifying event. Issues regarding the imposition of statutory penalties will also be addressed. The Court will review the evidence submitted and make its determinations on each of the issues described above.

At the outset, the Court notes that none of the parties disagree that ASC established a group health plan with Humana.[3] COBRA requires employers sponsoring group health plans to provide continuation coverage, specifically stating:

> The plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

29 U.S.C. § 1161(a).

As defined in the relevant statutes and regulations, it is clear that the plan established and maintained by ASC is subject to the requirements of COBRA.  See Kidder v. H&B Marine, Inc., 932 F.2d 347, 349 (5th Cir. 1991) (affirming district court's conclusion that defendant's group health-insurance plan was an ERISA plan and subject to COBRA).  The employer, as plan sponsor, is required to provide continuation coverage to qualified employees

---

[3] A "group health plan" is defined as "an employee welfare benefit plan providing medical care . . . to participants or beneficiaries directly or through insurance, reimbursement, or otherwise."  29 U.S.C. § 1167(1).  Additionally, an employee welfare benefit plan, under ERISA, is defined as "any plan, fund or program . . . established by an employer . . . for the purpose of providing for its participants . . . medical, surgical or hospital care or benefits . . . "  29 U.S.C. § 1002(1).

in the event of a qualifying event.[4]  Gaskell v. Harvard Coop.

Soc'y., 3 F.3d 495, 496 (1st Cir. 1993); see also Torres-Negron v.

Ramallo Brothers Printing, Inc., 206 F. Supp. 2d 120, 123 (D.P.R.

2002).   Thus, the duty to provide continuation coverage to

plaintiffs rests with ASC, the employer.

### A.   Plaintiff's right to notification

There is no dispute that the Plaintiffs' terminations

were "qualifying events" that triggered the notice obligations

under COBRA.[5]  29 U.S.C. § 1163(2).  Upon the occurrence of a

qualifying event such as termination of a covered employee, COBRA

allows the covered employee to elect continuation coverage of

health benefits for up to 18 months after the date of the

termination.  See 29 U.S.C. § 1162(1)-(2); see also Gaskell v.

Harvard Coop. Soc'y., 3 F.3d 495, 498 (1st Cir. 1993).  The parties

---

[4] "Plan sponsor" is defined as "the employer in the case of an
employee benefit plan established or maintained by a single
employer", as in this case.  29 U.S.C. § 1002(16)(B).

[5] Title 29, United States Code, Section 1163(2) states:  "For
purposes of this part, the term 'qualifying event' means, with
respect to any covered employee, any of the following events which,
but for the continuation coverage required under this part, would
result in the loss of coverage of a qualified beneficiary:  The
termination (other than by reason of such employee's gross
misconduct), or reduction of hours, of the covered employee's
employment."

dispute as to who is liable for failing to provide the notice required pursuant to 29 U.S.C. § 1166.  (Docket Nos. 70, 77).

Notice of COBRA rights must be provided to covered employees on two separate occasions under 29 U.S.C. § 1166.  First, the "group health plan" must provide written notice to each covered employee of their rights under COBRA upon commencement of coverage under the plan.  29 U.S.C. § 1166(a)(1).  Second, the employer of a covered employee must notify the administrator of a qualifying event, such as termination, within thirty days of the qualifying event.  Upon such notice, the "administrator" must notify the employee and any qualified beneficiary of his or her right to continued coverage within fourteen days thereafter, and allow him or her sixty days to elect continued coverage under the group health plan.  29 U.S.C. §§ 1166(a)(2), 1166(a)(4)(A), 1166(c), 1165(a)(1), 1167(3)(B).

Thus, plaintiffs had a right to be notified of their rights under the plan on two occasions:  (1) at the commencement of coverage under the plan in January of 2008; and (2) within forty-four days of termination of their employment.  29 U.S.C. § 1166; see Rodriguez v. Int'l. Coll. of Bus. and Tech., Inc., 364 F. Supp. 2d 40, 44-45 (D.P.R. 2005).  Plaintiffs indicate that they did not receive notification of their COBRA rights during their employment

Civil No. 08-2392 (FAB)                                              12

or after their termination.  (Docket No. 18-2.)  Neither ASC nor
Humana has provided any evidence disputing the fact that notice was
not given to plaintiffs on either occasion.

    **B.    Duty to Provide Initial Notice**

        The "group health plan" is responsible for providing
written notice to covered employees at the time of commencement of
coverage.  29 U.S.C. § 1166(a)(1).  ASC does not contest that it
established a group health plan with Humana.  The Court notes that
"COBRA does not specify who or what 'the group health plan' is"
other than defining it under ERISA as an employee welfare benefit
plan that is "established or maintained by an employer . . . to the
extent that such plan . . . was established or is maintained for
the purpose of providing for its participants or their
beneficiaries, through the purchase of insurance or otherwise . .
. medical, surgical, or hospital care or benefits . . . "  <u>See</u>
<u>Kidder v. H&B Marine, Inc.</u>, 932 F.2d 347, 356-7 (5th Cir. 1991)
(noting that "the law is silent on [the] question" of on "whom
section 1166(a)(1) places this initial notification burden"); <u>see</u>
<u>also</u> 29 U.S.C. §§ 1002(1), 1167(1), 42 U.S.C. § 300gg-91.

        Neither the Supreme Court nor the First Circuit Court of
Appeals has directly addressed this issue.  This district has
addressed this very issue in previous cases, however, and has

Civil No. 08-2392 (FAB)                                            13

consistently held that the employer has the duty to notify covered
employees of their rights upon commencement of coverage.   See
Berrios Cintron v. Capitol Food, Inc., 497 F. Supp. 2d 266, 269
(D.P.R. 2007); Rodriguez, 364 F. Supp. 2d 40, 44 (D.P.R. 2005);
Torres-Negron, 206 F. Supp. 2d 120, 124 (D.P.R. 2002); Curbelo-
Rosario v. Instituto de Banca y Comercio, Inc., 248 F. Supp. 2d 26,
30 (D.P.R. 2003).  ASC alleges, and plaintiffs do not dispute, that
shortly after ASC entered into a group health plan with Humana,
Principal Morales of ASC held a personnel meeting to announce the
coverage of the new health plan and inform employees of its costs
(Docket 11-5).  ASC provides no affirmative evidence that covered
employees were provided with written notice of their COBRA benefits
at this time, as required under COBRA.  29 U.S.C. § 1166(a)(1).
Therefore, this Court finds that ASC, as employer, failed in its
duty to provide written notice to its employees of their rights
under the plan at the time of commencement of coverage.

    **C.   Duty to Provide Post-Termination Notice**

         Plaintiffs were also denied their right to be notified of
continued coverage upon their termination.  Under 29 U.S.C. § 1166,
the employer must notify the "plan administrator" of a qualifying

Civil No. 08-2392 (FAB)                                              14

event within thirty days of the event.[6]   The plan administrator
then has a duty to notify beneficiaries of their COBRA rights
within fourteen days after receiving such notification from the
employer.  29 U.S.C. § 1166 (a)(4).

        ASC and Humana both argue that they are not the
administrator of the group health plan in this case.  The language
of the statute clearly states that the administrator is the "person
specifically so designated by the terms of the instrument under
which the plan is operated."  29 U.S.C. § 1002(16)(A).  If no
administrator is designated under the plan, the "plan sponsor" is

---

        [6] Under 29 U.S.C. § 1002(16), "plan administrator" is defined
as the following:

    (16) (A)  The term "administrator" means-
              (i)  the terms of the instrument under which the
    plan is operated;
              (ii) if an administrator is not so designated, the
    plan sponsor; or
              (iii)  in the case of a plan for which an
    administrator is not designated and a plan sponsor cannot be
    identified, such other person as the Secretary may by regulation
    prescribe.
    (B)  The term "plan sponsor" means
              (i)  *the employer in the case of an employee benefit
    plan established or maintained by a single employer*,
              (ii) the employee organization in the case of a plan
    established or maintained by an employee organization, or
              (iii)  in the case of a plan established or
    maintained by two or more employers or jointly by one or more
    employers and one or more employee organizations, the association,
    committee, joint board of trustees, or other similar group of
    representatives of the parties who establish or maintain the plan.

the administrator.  Id.  None of the parties to this litigation has

provided the Court with such an instrument.  Instead of a plan

instrument, both ASC and Humana have provided the Court with an

"Application for Group Insurance" that was supposedly filed by ASC

and sent to Humana, as evidence of the instrument under which the

plan is operated.  (Docket Nos. 14-19 & 22-5.)  Both ASC and Humana

refer to this document in support of the claim that the other is

the plan administrator.

###### 1.   ASC's argument

ASC alleges that the Application indicates that ASC

was a "fully insured" account for billing purposes.  (Docket

Nos. 14-19 & 22-5.)  ASC has also provided the Court with a web

page printout from the Humana website which states, in relevant

part, that "COBRA insurance administration, handled by Ceridian, is

automatically included in coverage for fully insured accounts."

(Docket No. 11-22.)  ASC asks the Court to conclude that it was not

the plan administrator under the instrument of the plan, based on

the website printout and the Billing Information section of the

Application.

###### 2.   Humana's Argument

Humana points to the Application's specific section

regarding COBRA membership in support of its claim that ASC was the

plan administrator.  In response to the question "COBRA Members?",

defendant ASC has marked an "X" in the NO column.  Further, in

response to the question "COBRA administered by", the options being

Employer and Humana, ASC left this column blank.  Humana claims

that because the Application does not specifically designate a

person as "administrator", the plan sponsor is the default

administrator.  Although this is a correct interpretation of the

relevant statute (29 U.S.C. § 1002(16)), Humana has not

appropriately identified the "instrument under which the plan is

operated" pursuant to which this analysis must take place.

    **3.    The Court's Analysis**

       The documents submitted by defendants do not take

the place of the "instrument under which the plan is operated", as

clearly required by the statute, to determine who has been

designated the plan administrator.  Courts that have addressed the

issue of determining the identity of the plan administrator have

looked to the plan itself to make this determination.  See Burnham

v. Guardian Life Ins. of Am., 873 F.2d 468, n. 5 (1st Cir. 1989);

Quinones Rodriguez v. Andoxx Corp., 440 F. Supp. 2d 77, 79 (D.P.R.

2006); Velazquez Arroyo v. MCS Life Ins. Co., 418 F. Supp. 2d 11,

14 (D.P.R. 2006).  Because neither Humana nor ASC has presented

evidence that conclusively determines the identity of the plan

administrator under "the instrument under which the plan is operated", both have failed to establish the absence of genuine issues of material fact regarding liability for failure to notify plaintiffs of their COBRA rights at their termination.[7]

Accordingly, summary judgment cannot be granted on these grounds.

**III. Imposition of Penalties and Damages**

In their motion for partial summary judgment, plaintiffs request the Court to impose penalties on ASC for failure to notify plaintiffs of their COBRA rights after termination.  For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED.**

In the event that a failure to notify has occurred, a beneficiary may bring a claim for the imposition of statutory penalties against an administrator who has failed to meet the notice requirements of sections 1166(a)(1) or (4).  See 29 U.S.C. § 1132(c)(1)(A).  Under 29 U.S.C. § 1132(c)(1)(A), the "court has

_____

[7] ASC argues in its brief that, even if it is found to be the plan administrator, penalties should not be imposed against it because it fulfilled its duties with reasonable diligence.  (Docket No. 11-2.)  ASC provides no case law support for its claim, and this Court will not entertain baseless defenses that are not accompanied by support.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Civil No. 08-2392 (FAB)                                                    18

discretion to find the administrator personally liable to the
participant for up to $110 per day from the date of failure until
the date of correction." Rodriguez, 364 F. Supp. 2d 40, 49 (D.P.R.
2005); see also 29 C.F.R. § 2575.502c-1 (increasing maximum civil
penalty from $100 to $110 per day for violations occurring after
July 29, 1997).

    ASC raises the argument that penalties should not be imposed
against it, even if it is found to be the plan administrator,
because plaintiffs did not request any documents from the plan
administrator.   (Docket No. 11-2.)   ASC cites to Watson v.
Deaconess Waltham Hospital, 298 F.3d 102, 112 (1st Cir. 2002), but
misinterprets that case's ruling regarding statutory penalties

Civil No. 08-2392 (FAB)                                                19

under ERISA.[8]   In Watson, the First Circuit Court of Appeals
declined to impose penalties on defendant for failing to provide
plaintiffs with a summary plan description because the court may
only order relief for this cause of action "if the plan
administrator fails to provide the appropriate documentation within
thirty days after a participant *requests* it." Watson, at 112 (1st
Cir. 2002); see 29 U.S.C. § 1132(c)(1)(B).

---

[8] The text of 29 U.S.C. § 1132(c)(1), regarding civil
penalties, reads as follows:

（1) Any administrator (A) who fails to meet the
requirements of paragraph (1) or (4) of section 1166 of
this title, section 1021(e)(1) of this title or section
1021(f), or section 1025(a)  of this title with respect
to a participant or beneficiary, or (B) who fails or
refuses to comply with a request for any information
which such administrator is required by this subchapter
to furnish to a participant or beneficiary (unless such
failure or refusal results from matters reasonably beyond
the control of the administrator) by mailing the material
requested to the last known address of the requesting
participant or beneficiary within 30 days after such
request may in the court's discretion be personally
liable to such participant or beneficiary in the amount
of up to $100 a day from the date of such failure or
refusal, and the court may in its discretion order such
other relief as it deems proper.  For purposes of this
paragraph, each violation described in subparagraph (A)
with respect to any single participant, and each
violation described in subparagraph (B) with respect to
any single participant or beneficiary, shall be treated
as a separate violation.

In this case, however, plaintiffs have not alleged a violation of their right to receive a summary plan description.  Instead, plaintiffs allege a violation of their right to receive notification of their COBRA benefits (1) at commencement of coverage under the plan and (2) after the occurrence of a qualifying event.  29 U.S.C. § 1166(1) & (4).  Under 29 U.S.C. § 1132(c)(1)(A), if an administrator "fails to provide the requisite COBRA notices, a court has discretion to find the administrator personally liable to the participant for up to $110 per day" and "[e]ach violation of the notification requirement provision of the statute must be treated as a separate violation." Rodriguez, 364 F. Supp. 2d 40, 49 (D.P.R. 2005) (distinguishing situation where penalties for failure to provide summary plan description were not awarded where documents were not requested, and failure to provide COBRA notification, where penalties of $80 per day were awarded). Thus, in assessing civil penalties against an administrator for failing to provide notice of continuation coverage under COBRA, a court need not require a beneficiary to show that he or she requested such notice.

ASC also argues that penalties should not be imposed against it, even if it is found to be the plan administrator, because courts "have been reluctant to impose the statutory penalty in the

absence of a showing of bad faith and prejudice to the plaintiff."
(Docket No. 11-2.)  The Court agrees, and notes that although a
showing of bad faith or prejudice is not necessarily a prerequisite
to impose penalties for failing to inform an employee of the right
to continued coverage, the court "*may* give weight - even
dispositive weight - to these factors in the exercise of its
discretion." Kerkhof v. MCI WorldCom, Inc., 282 F.3d 44, 56 (1st
Cir. 2002) (internal citations omitted); see also Berrios Cintron
v. Capitol Food, Inc., 497 F.Supp. 2d 266, 271 (P.R.D. 2007);
Gonzalez Villanueva v. Warner Lambert, 339 F. Supp. 2d 351, 359-60
(D.P.R. 2004) (no statutory penalties imposed on a plan
administrator in the absence of bad faith or prejudice).

Lastly, ASC argues that plaintiffs' claims for compensatory
damages are barred.  (Docket No. 11-2.)  The Court agrees; while
plaintiffs may be entitled to statutory penalties, compensatory
damages are not appropriate in this case. Gonzalez-Villanueva v.
Warner Lambert, 339 F. Supp. 2d 351, 360 (D.P.R. 2004); see, e.g.,
Torres-Negron, 203 F. Supp. 2d 120, 126 (D.P.R. 2002) (denying
plaintiffs' claims for compensatory damages and emotional and
mental distress because COBRA does not provide for such a remedy).
The First Circuit Court of Appeals has also held that "[t]echnical
violations of ERISA's notice provisions generally do not give rise

Civil No. 08-2392 (FAB)                                                    22

to substantive remedies outside § 1132(c) unless there are some exception circumstances, such as bad faith, active concealment, or fraud." Watson v. Deaconess Waltham Hospital, 298 F.3d 102, 113 (1st Cir. 2002).

Because the Court at this time cannot identify who the plan administrator is under the instrument under which the plan is operated, and cannot determine whether there was any bad faith or prejudice present to warrant imposition of statutory penalties under 29 U.S.C. § 1132, plaintiff's motion for partial summary judgment is **DENIED.**

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant ASC's motions for summary judgment; **DENIES** defendant Humana's motion for summary judgment, and **DENIES** plaintiff's motion for partial summary judgment.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 27, 2010.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE